IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRIAN GILMER; ANTHONY ROGERS; DELORIS
WILKINS; JERRY WILLIAMS and RAYMOND
ROBBINS,

       Plaintiffs,

    v.

ALAMEDA-CONTRA COSTA TRANSIT
DISTRICT,

       Defendant.

_____/

No. C 08-05186 CW

ORDER ON CROSS-
MOTIONS FOR
SUMMARY JUDGMENT

    This is a Fair Labor Standards Act case.  Plaintiffs are a
group of bus drivers employed by Defendant, Alameda-Contra Costa
Transit District.  Plaintiffs move for summary judgment, arguing
that Defendant violated § 7 the Fair Labor Standards Act by failing
to pay Plaintiffs one and one-half times their hourly rate as
overtime compensation for "start-end" and "split-shift" travel
time.[1]  Defendant cross-moves for summary judgment, arguing that
this travel time is not compensable and that Plaintiffs' claims
should be dismissed under the Motor Carrier Act exemption to the

_____

[1]Plaintiffs have decided not to pursue their claim for
"foreign division" travel time.

FLSA.  29 U.S.C. § 213(b).  The motions were heard on November 12,
2009.  Having considered oral argument and all of the papers filed
by the parties, the Court grants Plaintiffs' motion in part and
denies it in part and denies Defendant's motion.

BACKGROUND

Defendant operates a number of bus routes throughout Alameda
and Contra Costa counties.  Routes are assigned on a seniority
basis through periodic sign-ups by bus drivers.

Bus drivers' terms of employment and pay are set forth in a
collective bargaining agreement (CBA) entered into by Defendant and
the Amalgamated Transit Union, Local 192, AFL-CIO.  Drivers do not
submit time cards or punch time clocks to keep track of their hours
worked.  However, the time drivers spend driving buses is tracked
by an electronic system called SATCOM.  Skowbow Decl. at ¶ 8.
Drivers are guaranteed payment for at least eight hours of work for
every day that they work, even if they work less than eight hours
on a given day.  Monrad Decl., Exh. 13, CBA § 59.

Plaintiffs define start-end travel as the time spent returning
from the ending point of a daily assignment back to the starting
point.[2]  Section 54.01 of the CBA defines start-end time as
resulting from drivers "reporting for duty or checking in at the
home terminal or at some other place differing from the relief
point by reasons of the District's requirement to do so."  Monrad
Decl., Exh. 13, CBA § 54.01.  If drivers' shifts end at a different
locations than where they began, irrespective of whether they

---

[2]"Start-end" time could also be thought of as "return-to-
start" time.

2

actually return to their starting point at the end of the day, they are paid for their time based on the "scheduled running time" that it would take public transit (i.e. a different bus or BART) to return to the starting point. Skowbo Decl. ¶ 21. All ending points are located near bus stops or BART stations. The "scheduled running time" is the time published by Defendant or BART that it takes for public transit to travel to a location during peak travel times, which are the morning and evening rush hours. Id. at ¶ 20. It does not include time spent walking to the bus stop or BART station, waiting for the bus or BART or transferring between busses or BART trains.

Plaintiffs define split-shift travel as the time it takes them to travel between the two parts of a "split-run," where the ending point of the first part of the run differs from the starting point of the second part of the run. Section 54.02 of the CBA defines split-shift travel as travel resulting from "unpaid breaks in split runs where the second part of the run picks up at a point different from where the first part leaves off." Monrad Decl., Exh. 13, CBA § 54.02. When the break between parts is sixty minutes or less, it is paid as regular time worked, including any time spent in travel. Id. at § 62. Plaintiffs' claims regarding split-shift travel refer to travel between the ending point of the first part of the run and the starting point of the second part of the run, when the break between the two parts is more than sixty minutes. Drivers are paid straight time rates for their "scheduled running time" between points in this situation. About twenty-five percent of all drivers' runs involve split-runs with breaks in excess of sixty

3

1  minutes.  Skowbo Decl. at ¶ 7.

2  Defendant does not dictate how drivers should spend their time

3  between shifts or how they should travel between the ending point

4  of the first part and the starting point of the second part.

5  Skowbo Decl. at ¶ 24.

6  Prior to a June 11, 2008 contract modification, drivers were

7  paid for start-end travel time and split-shift travel time (if

8  their breaks between shifts were greater than sixty minutes) at

9  straight time based on the "scheduled running time of the service

10  then available."  Kelly Decl. at ¶ 3.  On this date, the CBA was

11  modified to provide that travel time would be paid at straight time

12  "except when such travel causes a driver's total work time to

13  exceed 8 hours per day or 40 hours per week, in which case such

14  overtime travel shall be compensated at straight time, plus 15% as

15  an overtime premium."  Monrad Decl., Exh. 13, CBA § 54.01.

16  Since the June 11 modification, Defendant has paid Plaintiffs

17  the fifteen percent overtime premium for start-end travel.

18  However, Plaintiffs argue that they should receive time and one-

19  half overtime for the "scheduled running time" of start-end travel

20  performed in excess of eight hours per day or forty hours per week.

21  With respect to split-shift travel with a break of greater

22  than sixty minutes, Plaintiffs allege that, despite the June 11

23  modification, Defendant pays for this time only at straight time

24  rates and only for "scheduled running time," even if that time is

25  incurred as overtime.  Plaintiffs argue that they should receive

26  overtime rates for the "actual running time" of split-shift travel

27  incurred in excess of eight hours in one day or forty hours in one

28  4

week.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987). The parties appear to agree on the facts as to the manner in which pay is calculated.

DISCUSSION

The FLSA requires that employers pay covered employees at least the federal minimum wage for all hours worked, and time and one-half for all hours worked in excess of forty hours in a single work week. 29 U.S.C. §§ 206(a)(1), 207(a)(1). "Work" is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." See Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944). The term "work" includes even non-exertional actions. See Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944) (noting that even "exertion" is not the sine qua non of "work" because "an employer . . . may hire a man to do nothing, or to do nothing but wait for something to happen").

By contrast, "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." 29 C.F.R. § 785.16. Each case is fact-specific: "Whether the time

is long enough to enable him to use the time effectively for his own purposes depends upon all the facts and circumstances of the case." Id.

The Portal-to-Portal Act (Portal Act) amended the FLSA to exclude from FLSA coverage "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," as well as "activities which are preliminary to or postliminary to said principal activity or activities," where such "traveling" or "activities" "occur either prior to the time on any particular workday at which such employee commences or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a). The Supreme Court has held that "activities performed either before or after the regular work shift . . . are compensable . . . if those activities are an integral and indispensable part of the principal activities for which [the employees] are employed." Steiner v. Mitchell, 350 U.S. 247, 256 (1956).

The Portal Act contains an exception to § 254(a):

Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to any activity, the employer shall not be so relieved if such activity is compensable by either--
(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or
(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such

6

activity, between such employee, his agent, or
collective-bargaining representative and his
employer.

29 U.S.C. § 254(b).  The Portal Act further states:

> (c) Restrictions on activities compensable under
> contract or custom
>
> For the purpose of subsection (b) of this section, an
> activity shall be considered as compensable under such
> contract provision or such custom or practice only when
> it is engaged in during the portion of the day with
> respect to which it is so made compensable.
>
> (d) Determinations of time employed with respect to
> activities
>
> [I]n determining the time for which an employer employs
> an employee with respect to walking, riding, traveling,
> or other preliminary or postliminary activities
> described in subsection (a) of this section, there shall
> be counted all that time, but only that time, during
> which the employee engages in any such activity which is
> compensable within the meaning of subsections (b) and
> (c) of this section.

The initial burden of proof in an FLSA overtime case rests
with the plaintiff.  See Anderson v. Mt. Clemens Pottery Co., 328
U.S. 680, 686-87.  An employee seeking to recover unpaid minimum
wages or overtime under the FLSA "has the burden of proving that he
performed work for which he was not properly compensated."
Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). In
view of the remedial purpose of the FLSA and the employer's
statutory obligation "to keep proper records of wages, hours and
other conditions and practices of employment," this burden is not
to be "an impossible hurdle for the employee."  Id.

> [W]here the employer's records are inaccurate or
> inadequate and the employee cannot offer convincing
> substitutes . . . the solution . . . is not to penalize
> the employee by denying him any recovery on the ground
> that he is unable to prove the precise extent of
> uncompensated work.  Such a result would place a premium

7

**United States District Court**
For the Northern District of California

> on an employer's failure to keep proper records . . . ;
> it would allow the employer to keep the benefits of an
> employee's labors without paying due compensation as
> contemplated by the [FLSA].

Id. The burden then shifts to the employer to show the precise number of hours worked or to present evidence sufficient to negate "the reasonableness of the inference to be drawn from the employee's evidence." Id. at 688. If the employer fails to make such a showing, the court "may then award damages to the employee, even though the result be only approximate." Id.

"The FLSA is construed liberally in favor of employees; exemptions are to be narrowly construed against the employers seeking to assert them." Cleveland v. City of Los Angeles, 420 F.3d 981, 988 (9th Cir. 2005) (quotation marks and citations omitted). "To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people." Donovan v. Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir. 1983). "An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies . . . ." Id.

I.   Evidence of Start-End and Split-Shift Travel Time

Defendant argues that Plaintiffs' claims fail because Plaintiffs do not maintain records of the actual time they spent performing start-end and split-shift travel. However, Defendant maintains time records for drivers' assigned schedules, which include detailed information for every scheduled run. The schedules include information such as the time and place that their shifts start and end, and the start-end travel time and the split-

shift travel time, both listed according the scheduled run times. Monrad Decl., Exh. 4. They also reflect that drivers are not compensated at time and one-half for start-end travel time and split-shift travel time on days when they work more than eight hours or weeks when they work more than forty hours. Monrad Decl., Exh. 4, 7. Determining the exact amount of travel time is an issue for the damages phase of this action. The Court may enter summary judgment on Defendant's liability even if actual damages cannot precisely be calculated. As noted above, the Court may "award damages to the employee, even though the result be only approximate." <u>Anderson</u>, 328 U.S. at 688.

II.   Start-End Travel Time

Defendant claims that start-end travel time is not compensable under the Portal Act. As noted above, the Portal Act includes exceptions for activities that are compensable under either an express contract or a "custom or practice." 29 U.S.C. § 259(b). The implementing regulations explain the significance of the exceptions to the Portal Act as follows:

> If time spent in such an activity would be time worked within the meaning of the Fair Labor Standards Act if the Portal Act had not been enacted, then the question whether it is to be included or excluded in computing hours worked under the law . . . depends on the compensability of the activity under the relevant contract, custom, or practice applicable to the employment. . . . But where, apart from the Portal Act, time spent in such an activity would not be time worked within the meaning of the Fair Labor Standards Act, although made compensable by contract, custom, or practice, such compensability will not make it time worked under section 4(d) of the Portal Act.

29 C.F.R. § 790.5(a). Ordinary travel time from home to work, even prior to the enactment of the Portal Act, was not considered hours

9

United States District Court
For the Northern District of California

worked.  <u>Anderson</u>, 328 U.S. at 691.  Moreover, § 785.34 of the

regulations states:

> [29 U.S.C. § 254(b)] provides that the employer shall
> not be relieved from liability if the activity is
> compensable by express contract or by custom or
> practice not inconsistent with an express contract.
> Thus traveltime at the commencement or cessation of
> the workday which was originally considered as working
> time under the Fair Labor Standards Act (such as
> underground travel in mines or walking from time clock
> to work-bench) need not be counted as worktime unless
> it is compensable by contract, custom or practice.  If
> compensable by express contract or by custom or
> practice not inconsistent with an express contract,
> such travel time must be counted in computing hours
> worked.  However, ordinary travel from home to work
> (see § 785.35) need not be counted as hours worked
> even if the employer agrees to pay for it.

Thus, the exceptions to the Portal Act do not render compensable

time that would not otherwise have been compensable under the FLSA.

29 C.F.R. § 790.7 ("[E]ven where there is a contract, custom, or

practice to pay for time spent in such a 'preliminary' or

'postliminary' activity, section 4(d) of the Portal Act does not

make such time hours worked under the Fair Labor Standards Act.").

Accordingly, Plaintiffs' start-end travel time, even if they were

paid for it, would not be included in computing their hours worked

for overtime purposes if it were considered travel from work to

home.  Thus, the question is whether start-end travel time is

different from work-to-home commute time.

Start-end travel time results from Defendant's requirement

that drivers end certain routes in locations different from where

they started.  At the end of a run, drivers are not required to

return to the starting point and they are completely free to do as

they wish.  Defendant argues that it receives no further benefit

from those drivers after their busses reach an end-point.  However, Defendant benefits from being able to schedule its bus routes so that end points differ from start points.

Plaintiffs admit that there may be "some instances" where drivers finish at a location from which they can easily return home without first returning to the starting point.  However, most drivers, especially those who have driven, walked or bicycled to the starting point, must spend time returning to the starting point before going home.

To support its argument that start-end time is not compensable hours worked, Defendant relies largely on Wren v. RGIS Inventory Specialists, 2009 WL 2612307 (N.D. Cal.) and Johnson v. RGIS Inventory Specialists, 554 F. Supp. 2d 693 (E.D. Tex. 2007).  In both cases, the plaintiffs had the option of meeting at designated "meet-sites" and taking employer-provided shuttles to work-sites. The plaintiffs were not required to take the shuttles and could commute to the work-site however they wished.  The plaintiffs were compensated for this time according to company custom and policy. At issue was whether that travel time constituted hours worked under the FLSA.  In both cases, the courts held that it did not.

In Wren, the court concluded that

time spent on company-provided transportation is "normal travel from home to work" and thus, is not considered "work time" under the FLSA and the Portal-to-Portal Act. See 29 C.F.R. § 785.45.  This conclusion is supported by the undisputed fact that RGIX employees are not required to use company-provided transportation.  Thus, this is not a scenario in which employees are entitled to compensation under the FLSA because they are "required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools."  See 29 C.F.R. § 785.38; see also D A & S Oil

11

<u>Well Servicing, Inc. v. Mitchell</u>, 262 F.2d 552, 554-55 (10th Cir. 1958).

<u>Wren</u>, 2009 WL 2612307, at *7.

In <u>Johnson</u>, the court concluded that travel time from the meet-site to the work location and back was ordinary home-to-work-and-back travel and was not compensable. 554 F. Supp. 2d at 705. The court relied on the fact that the use of the meet-site and company transportation was entirely voluntary. <u>Id.</u> The court also noted that the plaintiff accepted the job with the understanding that she would be working in diverse store locations and that extensive travel was required. <u>Id.</u>

The present case is distinguishable because it does not concern optional shuttle buses to work sites. Plaintiffs must travel to the starting point to pick up their buses and do not seek payment for that travel time. However, they are <u>required</u> to end their runs elsewhere. Plaintiffs do not voluntarily choose to end their runs at a different location from where they began. The start-end travel at issue here "is not primarily undertaken for the convenience of [the employees] and bears no relation whatever to their needs." <u>Tenn. Coal</u>, 321 U.S. at 599. Instead the start-end travel is compelled by the scheduling arrangements made by Defendant. Absent fortuitous circumstances, the employees must spend time returning to their starting point before beginning their commute home. This is not normal commute time.

In <u>United Transportation Union Local 1745 v. City of Albuquerque</u>, the Tenth Circuit addressed circumstances almost identical to those in the instant case and concluded that start-end

12

travel time by city bus drivers is "classic commuting-to-work"
time. 178 F.3d 1109, 1121 (10th Cir. 1999):

> "Ordinary home to work travel is not compensable under
> the FLSA, regardless of whether or not the employee
> works at a fixed location." <u>Imada v. City of Hercules</u>,
> 138 F.3d 1294, 1296 (9th Cir. 1998). <u>See</u> 29 C.F.R.
> § 785.35 ("An employee who travels from home before his
> regular workday and returns to his home at the end of
> the workday is engaged in ordinary home to work travel
> which is a normal incident of employment. This is true
> whether he works at a fixed location or at different job
> sites.").

<u>City of Albuquerque</u>, 178 F.3d at 1121. The court concluded, "While
it may be more awkward or inconvenient to arrange for
transportation to and from work where the employees, like the
drivers here, may begin or end their work day at diverse locations,
such awkwardness or inconvenience does not change an otherwise
non-compensable commute into compensable work time." <u>Id.</u>

    <u>City of Albuquerque</u>'s reliance on the legal authorities it
quotes is misplaced. <u>Imada</u> and 29 C.F.R. § 285.25 concern
employees who leave home and travel to various different locations
to begin their work day. They do not address the situation in
which employees end work at a different location from where they
begin work. Although <u>City of Albuquerque</u> discounts start-end
travel time as the result of mere "awkwardness or inconvenience,"
that time spent cannot be overlooked. The ending points are not
chosen for the convenience of the employees. Rather, arranging an
ending point different from a starting point is "required by the
employer and pursued necessarily and primarily for the benefit of
the employer." <u>Tenn. Coal</u>, 321 U.S. at 598.

    In sum, the Court concludes that start-end travel time is

13

compensable under the FLSA.  Plaintiffs seek overtime compensation for start-end travel time calculated on "scheduled running time." As noted above, section 4(d) of the Portal Act provides:

> [I]n determining the time for which an employer employs an employee with respect to walking, riding, traveling, or other preliminary or postliminary activities described in subsection (a) of this section, there shall be counted all that time, but only that time, during which the employee engages in any such activity which is compensable within the meaning of [the contract/custom exception to the Portal Act].

The Department of Labor regulation implementing this provision notes that "only the amount of time allowed by the contract or under the custom or practice is required to be counted.  If, for example the time allowed is 15 minutes but the activity takes twenty-five minutes, the time to be added to other working time would be limited to 15 minutes."  29 C.F.R. § 785.9(a).  Section 54.01 of the CBA provides that pay for start-end travel time "shall be computed on the scheduled running time of the services then available."  Accordingly, Plaintiffs' start-end travel time, according to the scheduled running time, must be counted as hours worked when calculating their overtime rate.  Therefore, the Court grants Plaintiffs' motion for summary judgment and denies Defendant's motion for summary judgment on this issue.

II.  Split-Shift Travel Time

Defendant does not contend that split-shift travel time is excepted from FLSA coverage by the Portal Act.  Nevertheless, Defendant argues that such time is not statutorily compensable. Both parties rely on City of Albuquerque for support.  Although, as discussed above, the court there held that start-end travel time

14

was non-compensable, it also concluded that split-shift travel time was compensable. <u>City of Albuquerque</u>, 178 F.3d at 1119. The court concluded:

> We believe there is a meaningful distinction between time spent shuttling to or from a relief point, where a working shift just ended or is about to begin, and the remainder of the drivers' split shift periods, during which they have an extended block of time in which to pursue, as most testified they do, purely personal pursuits. While shuttling to or from a relief point, the drivers are not free to do whatever they wish -- they must spend that time traveling to or from a location dictated by the City, and situated to serve the City's need to provide an efficient and useful bus transportation system. They travel to and from such points as a necessary part of their principal activity of driving particular bus routes for the City.

<u>Id.</u> Defendant argues that <u>City of Albuquerque</u> is distinguishable because the plaintiffs in that case were required to take a city operated shuttle between the end point of their first shift and the beginning point of their second shift. However, nothing in the court's reasoning relies on this fact. Although drivers there and here are free to use the time between the first and second run as they wish, they "<u>must</u> get to and from diverse relief points if they are to perform their principal activity of driving the particular bus route assigned them." <u>Id.</u> at 1120 (emphasis in original). Thus, the split-shift travel time is "integral and indispensable" to a "principal activity." <u>IBP, Inc. v. Alvarez</u>, 546 U.S. 34, 33 (2006). The fact that the entire split-shift period is not compensable "does not mean that all activity related to that period, including any associated travel, should be treated the same." <u>City of Albuquerque</u>, 178 F.3d at 1120. Therefore, split-shift travel time is compensable under the FLSA.

15

Because split-shift travel time constitutes a part of the drivers' "principal activity" and is not excepted by the Portal Act, the amount of split-shift travel time that must be counted as hours worked is the <u>actual time</u> spent in split-shift travel, not the "scheduled running time" of the services then available. Under the FLSA, all time during which the employee was "suffer[ed] or permit[ted]" to work are included as hours worked. 29 U.S.C. § 203(g). Therefore, the Court concludes that the amount of split-shift travel time which counts toward the drivers' weekly hours worked must be calculated using the amount of time it would actually take drivers to travel directly from the end point of their first shift to the beginning point of their second shift. Accordingly, the Court grants Plaintiffs' motion for summary judgment and denies Defendant's motion for summary judgment on this issue.

III. <u>De Minimis</u> Doctrine

Defendant argues that Plaintiffs' split-shift travel claim should be dismissed pursuant to the <u>de minimis</u> doctrine. The Court disagrees.

"The <u>de minimis</u> rule is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes." <u>Lindow v. United States</u>, 738 F.2d 1057, 1062 (9th Cir. 1984) The <u>de minimis</u> rule applies

> only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable

16

> period of time he is regularly required to spend on
> duties assigned to him.

29 C.F.R. § 785.47. "Employers, therefore, must compensate

employees for even small amounts of daily time unless that time is

so minuscule that it cannot, as an administrative matter, be

recorded for payroll purposes." Lindow, 738 F.2d at 1062-63. In

addition to the practical administrative difficulty of recording

the additional time, courts also consider the aggregate amount of

compensable time and the regularity of the additional work. Id. at

1063. The burden is on the employer to show that the time consumed

by the activity is de minimis. Rutti v. Lojack Corp., Inc., 578

F.3d 1084, 1095 n.11 (2009).

Defendant argues that Plaintiffs' claim for split-shift

compensation "averages out to significantly less than a minute per

day per driver." Motion at 21. Defendant relies on a ninety-six

week period, from December 2, 2007 to September 29, 2009, for this

calculation.[3] Plaintiff objects to this ninety-six week period as

an unrepresentative sample.[4] It is not clear which weeks

Plaintiffs would have preferred to analyze because they have not

presented a counter-argument based on different data. This sample

---

[3]Although Plaintiffs claim damages from August 7, 2006 to the
present, Defendant provided ninety-six weeks worth of data (from
December 2, 2007 to September 29, 2009) to Plaintiffs during
discovery. At the hearing on these motions, Defendant claimed that
it does not keep time records going back further than December 2,
2007.

[4]Plaintiffs object to the evidence relied upon by Defendant to
make its de minimis arguments -- the declarations of Sandra Lewis-
Williams and Phillip Alman. The Court overrules this objection
because the declarations are reliable and do not violate Federal
Rules of Civil Procedure 26 and 37.

17

covers a large portion of the entire period of claimed harm, which began on August 7, 2006 and continues to the present.  Because Plaintiffs have not presented evidence to the contrary, the Court will use the data from these ninety-six weeks.

Over this time period, of the five named Plaintiffs, one experienced no instances of split-shift travel during any week in which he worked more than forty hours, one experienced it in one week, two experienced it in four weeks and two experienced it in twelve weeks.  Lewis-Williams Decl. at 3-4.  Defendant asserts that named Plaintiffs' overtime split-shift travel time averages to less than thirty seconds of compensation per day.  Id. at 5.  Defendant arrived at this daily average by adding the split-shift overtime hours incurred by all five named Plaintiffs in the ninety-six week period, and dividing those hours by the total number of hours worked by all named Plaintiffs in those ninety-six weeks. Defendant then divided the average weekly minutes by five to get the average daily minutes per Plaintiff.[5]

In Lindow, the Ninth Circuit noted that "most courts have found daily periods of approximately 10 minutes de minimis even though otherwise compensable."  Lindow, 738 F.2d at 1062.  However, the court also stated, "There is no precise amount of time that may be denied compensation as de minimis . . . No rigid rule can be applied with mathematical certainty."  738 F.2d at 1062.

---

[5]Defendant also performed an analysis in which it took a random sample of fifty drivers from a list of 1,338 prospective class members and concluded that the average split-shift travel time per day subject to overtime pay was one minute and forty-four seconds.  Allman Decl. at 5.

1     Here, although Plaintiffs' daily claims over a ninety-six week

2  period constitute a small portion of time, it is misleading to

3  focus on daily averages.  For instance, Plaintiff Gilmer worked

4  overtime twelve weeks out of ninety-six, counting his split-shift

5  travel time.  In those weeks, he worked overtime from forty-seven

6  to one-hundred-five minutes.  Lewis Williams Decl. at 3.  These

7  amounts are not insubstantial.  The total for the twelve weeks is

8  797 minutes.[6]  However, divided into minutes per day over ninety-

9  six weeks, this amounts to approximately one minute and forty

10  seconds of uncompensated overtime worked per day.

11     Courts allow plaintiffs to aggregate their overtime claims so

12  that courts may grant "relief for claims that might have been

13  minimal on a daily basis but, when aggregated, amounted to a

14  substantial claim."  Lindow, 738 F.2d at 1063.  The Ninth Circuit

15  noted, "We would promote capricious and unfair results, for

16  example, by compensating one worker $50 for one week's work while

17  denying the same relief to another worker who earned $1 a week for

18  50 weeks."  Id.  Thus, aggregation is not designed to be used as a

19  tool for defendants to dilute plaintiffs' claims.  Doing so would

20  conflict with the remedial purposes of the FLSA.  Anderson, 328

21  U.S. at 687.

22     Although the amount of overtime Plaintiffs seek is not large

23  in the scheme of a work-day, it does not approach the realm of

24  "split second absurdities" against which the Supreme Court

25  cautions.  Id. at 692.  Accordingly, the Court concludes that

26

27     [6]Defendant's expert incorrectly calculated that these minutes
totalled 793.  Lewis-Williams Decl. at 3.

28                           19

Defendant has not carried its burden to prove that Plaintiffs'
overtime claims for split-shift travel time are <u>de minimis</u>.

IV.  Willfulness and Liquidated Damages

     A.  Willfulness

     Under the FLSA, claims for unpaid compensation are typically
subject to a two-year statute of limitations.  29 U.S.C. § 255(a).
However, the limitations period may be extended to three years for
a cause of action "arising out of a willful violation" of the
statute.  <u>Id.</u>  "A violation of the FLSA is willful if the employer
'knew or showed reckless disregard for the matter of whether its
conduct was prohibited by the [FLSA].'"  <u>Chao v. A-1 Med. Servs.,
Inc.</u>, 346 F.3d 908, 918 (9th Cir. 2003) (quoting <u>McLaughlin v.
Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988)).  "If an employer acts
unreasonably, but not recklessly, in determining its legal
obligation" under the FLSA, its action is not willful.  <u>McLaughlin</u>,
486 U.S. at 135 n.13.  Plaintiffs have presented enough evidence to
allow a jury reasonably to conclude that Defendant acted willfully
in its violations of the FLSA.  However, the Court denies
Plaintiffs' motion for summary judgment on this issue because there
are triable issues of fact as to whether Defendant acted willfully.
Therefore, Plaintiffs may present evidence pertaining to
Defendant's liability for unpaid wages commencing three years
before the filing of this lawsuit.

     B.  Liquidated Damages

     For violations of the FLSA's overtime wage provisions,
employers "shall be liable to the . . . employees affected in the
amount of . . . overtime compensation, as the case may be, and in

20

an additional equal amount as liquidated damages." 29 U.S.C.
§ 216(b) (1999); see Overnight Motor Transp. Co. v. Missel, 316
U.S. 572, 583-84 (1942) (observing that FLSA liquidated damages are
not penalties exacted by law but, rather, compensation to the
employee occasioned by the delay in receiving wages due).

> Under 29 U.S.C. § 260, courts need not award
> liquidated damages in every instance; instead, courts
> retain discretion to withhold a liquidated damages
> award, or to award less than the statutory liquidated
> damages total, where an employer shows that, "despite
> the failure to pay appropriate wages, the employer
> acted in subjective 'good faith' and had objectively
> 'reasonable grounds' for believing that the acts or
> omissions giving rise to the failure did not violate
> the FLSA." Herman v. RSR Sec. Servs. Ltd., 172 F.3d
> 132, 142 (2d Cir. 1999); see 29 C.F.R. § 790.17(i)
> n.110 (1999).[7]

Alvarez v. IBP Inc., 339 F.3d 894, 909 (9th Cir. 2003). On the
record presented to the Court to date, Plaintiffs have not carried
their burden to prove that there are no genuine issues of material
fact as to whether Defendant acted in good faith and had
objectively reasonable grounds for failing to compensate Plaintiffs
overtime wages for start-end and split-shift travel time.
Accordingly, the Court denies Plaintiffs' motion on this issue.

V.    The Motor Carrier Act Exemption

Defendant contends that Plaintiffs are not covered by the

---

[7]Section 260 provides in relevant part:

In any action . . . to recover unpaid minimum wages,
unpaid overtime compensation, or liquidated damages, under
the [FLSA], if the employer shows to the satisfaction of
the court that the act or omission giving rise to such
action was in good faith and that he had reasonable
grounds for believing that his act or omission was not a
violation of the [FLSA], the court may, in its sound
discretion, award no liquidated damages or award any
amount thereof . . . .

21

maximum hour and overtime provisions of the FLSA because the Motor Carrier Act (MCA) exemption applies. 29 U.S.C. § 213(b)(1). The MCA exemption applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." Id. In accord with the regulatory authority of the Department of Transportation, the MCA exemption covers employees of motor private carriers who engage in activities affecting the safe operation of motor vehicles on public highways and involve the transportation of goods in interstate commerce. 49 U.S.C. § 31502. For the statutory exemption under § 213(b)(1) to apply, the Secretary need not actually regulate the driver or the employer; it applies whenever the Secretary has the authority to regulate a driver's hours and safety. Klitzke v. Steiner Corp. 110 F.3d 1465, 1468 (9th Cir. 1997). The MCA exemption is to be construed narrowly against employers and applies only to those falling "plainly and unmistakably within [the] terms and spirit" of the exemption. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 396 (1960). Defendant bears the burden of proving the MCA exemption applies. Id. at 394 n.11; Donovan v. Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir. 1983).

The Secretary does not have automatic jurisdiction over all drivers of an interstate carrier; jurisdiction extends only to drivers who reasonably could be expected to make one of the carrier's interstate runs, and that means more than a remote possibility. Reich v. American Driver Service, Inc., 33 F.3d 1153, 1156 (9th Cir. 1994). An "employee's minor involvement in

22

interstate commerce does not necessarily subject that employee to the Secretary of Transportation's jurisdiction for an unlimited period of time, and if the employee's minor involvement can be characterized as <u>de minimis</u>, that employee may not be subject to the Secretary of Transportation's jurisdiction at all." <u>Id.</u> (internal quotation marks and citations omitted).

Moreover, for the reasonable expectation test to apply, "a carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof that interstate business was solicited," <u>Rossi v. Associated Limousine Svcs.</u>, 438 F. Supp. 2d 1354, 1361, 1362 (S.D. Fla. 2006), and the carrier must be shown to "have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question," <u>Reich</u>, 33 F.3d at 1156.

Here, the bus drivers themselves do not ever cross state lines. Although Defendant contends that the MCA exception applies because drivers regularly operate buses on interstate highways, it does not cite any authority to support this proposition. Defendant also argues that its express services to the Port of Oakland and Oakland International Airport bring the drivers under the MCA exemption. However, "where a carrier transports passengers between an airport and another point in the state, operating wholly within a state, selling no through tickets, and having no common arrangements with connecting out-of-state carriers, such transport represents intrastate commerce regardless of the passengers' ultimate destination or intent to complete an interstate journey." <u>Morrison v. Quality Transp. Servs., Inc.</u>, 474 F. Supp. 2d 1303,

1310 (S.D. Fla. 2007) (internal quotation marks omitted).  Thus, the fact that drivers may pick up and drop off passengers at the Port of Oakland and the Oakland International Airport is irrelevant absent the presence of a "through-ticketing" arrangement with an interstate carrier.

Defendant asserts that it maintains such a "through-ticketing" arrangement with Amtrak in the Capital Corridor program.  However, the evidence does not support Defendant's argument that its arrangement with Amtrak is a true though-ticketing arrangement with an interstate transportation provider.  A through-ticketing arrangement is one in which a passenger can use <u>one pass</u> for transportation on Defendant's buses as well as transportation between states.  <u>See</u> <u>United Transp. Union Local 759 v. Orange Newark Elizabeth Bus Co.</u>, 111 F. Supp. 514, 518 (D. N.J. 2000). Here, Defendant's contract is with the "Capitol Corridor Joint Powers Authority," not with Amtrak itself.  Moreover, there is no single ticket or prearranged package that can be purchased for travel on both Amtrak and Defendant's busses.  Defendant has not presented any evidence that proves that any individuals who use Capitol Corridor transfers actually travel to or from another state.  Accordingly, Defendant has not carried its burden of showing that the MCA exemption "plainly and unmistakably" applies to any Plaintiff.  Therefore, the Court denies Defendant's summary judgment motion on this issue.

CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for summary judgment (Docket No. 70) and

denies Defendant's motion for summary judgment (Docket No. 78).
Start-end and split-shift travel time is compensable as hours
worked under the FLSA and must be included in calculating hours
worked for overtime purposes.  Start-end travel time shall be
calculated based on scheduled running time; and split-shift travel
time shall be calculated based on actual travel time, which will be
determined at the damages phase of this action.  At this juncture,
the Court concludes that Plaintiffs are not entitled, as a matter
of law, to liquidated damages or a finding that Defendant acted
willfully; rather, factual disputes must be resolved.  Within two
weeks from the date of this order, the parties shall meet and
confer to discuss a plan for discovery.  A further case management
conference will be held on April 27, 2010 at 2:00 p.m.

IT IS SO ORDERED.

Dated: 01/15/10

_____
CLAUDIA WILKEN
United States District Judge