**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN GILMER; ANTHONY RODGERS; DELORIS WILKINS; JERRY WILLIAMS; and RAYMOND ROBBINS,<br><br>            Plaintiffs,<br><br>      v.<br><br>ALAMEDA-CONTRA COSTA TRANSIT DISTRICT,<br><br>            Defendant.<br>─────────────────────────────/ | No. C 08-05186 CW<br><br>ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (Docket Nos. 209 and 216) |

Plaintiffs and their opt-in class are bus drivers who have brought a collective action, pursuant to the Fair Labor Standards Act (FLSA), against their employer, Defendant Alameda-Contra Costa Transit District (AC Transit).  The parties stipulated to conditional certification of the collective action.  In doing so, AC Transit reserved the right to challenge the certification of the collective action at a later time.  On January 15, 2010, this Court granted summary judgment for Plaintiffs on the issue of liability.  Plaintiffs now move for partial summary judgment, contending that there is no material dispute as to various issues related to damages.  Docket No. 209.  AC Transit opposes and cross-moves to decertify the collective action and for summary judgment adjudication of certain aspects of the damages calculation.  Docket No. 216.

BACKGROUND

I. The Claims

AC Transit operates a number of bus routes throughout Alameda and Contra Costa counties.  Bus drivers' terms of employment and pay are set forth in a collective bargaining agreement (CBA) entered into by AC Transit and the Amalgamated Transit Union, Local 192, AFL-CIO.  Drivers do not submit time cards or punch time clocks to keep track of their hours worked.  The time drivers spend driving buses is tracked by an electronic system.

At issue in this case is travel time of two types.  The first is "start-end" travel time: the time spent returning from the ending point of a daily assignment back to the starting point. Section 54.01 of the CBA defines start-end travel time as resulting from drivers "reporting for duty or checking in at the home terminal or at some other place differing from the relief point by reasons of the District's requirement to do so."  Philip Monrad Declaration,[1] Ex. K, CBA § 54.01.  If drivers' shifts end at different locations than where they began, irrespective of whether they actually return to their starting point at the end of the day, they are paid at their straight time rate for the "scheduled running time" that it would take them to return to the starting point on public transit (i.e. a different bus or BART). All ending points are located near bus stops or BART stations.

_____

[1] Unless otherwise indicated, the Monrad Declaration is the declaration submitted on May 19, 2011.

United States District Court
For the Northern District of California

The "scheduled running time" is the time published by AC Transit or BART that it takes to travel on public transit from one location to another during peak travel times, which are the morning and evening rush hours.  It does not include time spent walking to the bus stop or BART station, waiting for the bus or BART or transferring between buses or BART trains.

The second type of travel time at issue is "split-shift" travel time.  Section 54.02 of the CBA defines split-shift travel time as travel time resulting from "unpaid breaks in split runs where the second part of the run picks up at a point different from where the first part leaves off."  Monrad Dec., Ex. K, CBA § 54.02.  When the break between parts is sixty minutes or less, it is paid as regular time worked, including any time spent in travel.  Id. at § 62.  Plaintiffs' claims regarding split-shift travel time relate to travel time between the ending point of the first part of a split run and the starting point of the second part of the run, when the break between the two parts is more than sixty minutes.  Drivers are paid straight time rates for the scheduled running time for travel between the end point of the first run and the starting point of the second run.  About twenty-five percent of all drivers' runs are split, with breaks in excess of sixty minutes.  When the Court refers to split-shift travel time below it refers to split-shift travel time with breaks in excess of sixty minutes, unless otherwise noted.

United States District Court
For the Northern District of California

AC Transit does not regulate how drivers spend their time between shifts or how they travel between the ending point of the first part and the starting point of the second part.

On June 11, 2008 the CBA was modified to add section 54.04, providing that start-end travel time and split-shift travel time, where there is an unpaid break of more than sixty minutes in between the runs, would continue to be paid at straight time "except when such travel causes a driver's total work time to exceed 8 hours per day or 40 hours per week, in which case such overtime travel shall be compensated at straight time, plus 15% as an overtime premium." Monrad Dec., Ex. KK at 4:3-13. Since this modification, AC Transit has paid Plaintiffs a fifteen percent overtime premium for start-end and split-shift travel time when this travel causes the total hours worked to exceed eight hours per day or forty hours per week. AC Transit does not pay a premium of time and one-half based on this time.

Plaintiffs argue that they are entitled to overtime pay at the rate of time and one-half of their regular rate of pay, the rate the FLSA requires, based on the "scheduled running time" of start-end travel time and actual split-shift travel time that results in work time in excess of forty hours per week. Plaintiffs seek damages for the difference between what they were actually paid for start-end and split-shift travel time and what they should have been paid as required by the FLSA.

## II. Background of the Dispute

Since at least 2003, Plaintiffs, the union and AC Transit have engaged in communications, negotiations, arbitration and lawsuits to address AC Transit's compliance with contractual and statutory wage and hour requirements, including the FLSA overtime dispute at issue in this action. See Monrad Dec. at ¶ 14. On August 14, 2004, the union and four named bus driver plaintiffs (who are four of the five named Plaintiffs here) filed in Alameda County Superior Court a Class Action Complaint for Breach of Contract, Violation of California Labor Code and IWC Wage Orders and Fair Labor Standards Act for Wages and Compensation Earned, But Not Paid. Id. at ¶ 15. The plaintiffs were represented by Plaintiff's counsel here. Following a September 14, 2004 agreement with AC Transit to dismiss the class action without prejudice and toll the plaintiffs' claims, the plaintiffs submitted to AC Transit a Position Statement in a further attempt to resolve the claims informally. Id. at ¶ 16, Ex. M; October 1, 2009 Declaration by Philip Monrad (10/1/09 Monrad Dec.) at ¶ 18, Ex. 17. The statement explained why, in the plaintiffs' view, start-end travel time and split-shift travel time were compensable "hours worked" subject to FLSA requirements.

On March 18, 2005, the plaintiffs' counsel wrote to AC Transit's counsel, including its Chief Labor Counsel Marcia Hoyt, General Counsel Kenneth Scheidg and outside counsel Michael Loeb, of Bingham McCutchen, LLP. Monrad Dec., Ex. W. In the letter the

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

plaintiffs' counsel insisted that AC Transit owed split-shift travel time pay at the overtime rate of time and one-half of the straight time pay rate when that travel time was in excess of forty hours per week.[2]   The letter acknowledged that AC Transit relied on United Transp. Union Local 1745 v. City of Albuquerque, 178 F.3d 1109 (10th Cir. 1999), in defending the legality of its pay practices, and challenged that reliance.

On December 27, 2005, the parties in the 2004 state court class action entered into a Settlement Agreement as to certain claims and provided a framework for resolving the remaining claims, including claims for overtime pay under the FLSA.  Monrad Dec. at ¶ 17.  In the 2005 agreement, the parties agreed "to submit their claims for breach of the collective bargaining agreement to binding arbitration before Arbitrator R. Douglas Collins on January 18 and 25, 2006."  Id., Ex. N at 1-2.  The parties further agreed that the issue presented for arbitration was

> Has A-C Transit District violated Section 54.0 of the Collective Bargaining Agreement by failing to pay travel time to bus operators who drive regular scheduled runs which result in different starting and ending points; and if so, what is the appropriate remedy?

---

[2] The substantive argument in the letter was limited to AC Transit's liability for split-shift travel time, but at the letter's conclusion, counsel for the plaintiffs reasserted that AC Transit was also liable for time and one-half overtime pay for start-end travel time.

United States District Court
For the Northern District of California

Id.  The 2005 Settlement Agreement also provided that, except for "Report time & Turn-In time and drug testing time claims," the plaintiffs retained their "right to refile, serve and litigate their statutory claims after receipt of Arbitrator Collins' award," and a tolling agreement continued to apply to those claims.[3]  Id.  The plaintiffs and AC Transit held a one-day arbitration hearing before Arbitrator Collins on January 18, 2006.

On August 7, 2006, Arbitrator Collins issued his Opinion and Award resolving the January 2006 arbitration, finding that AC Transit had violated section 54.0 of the CBA by failing to pay bus drivers anything for start-end and split-shift travel time. Monrad Dec., Ex. R.  Arbitrator Collins ordered AC Transit to pay start-end and split-shift travel time, retroactive to October 24, 2003, and henceforth.  Id. at 15.  The determination of which employees were entitled to retroactive pay and the computation of the amounts owed was remanded to the parties.  Id.

---

[3] The 2005 Settlement Agreement was not submitted for court approval.  See Monrad Dec. at ¶ 17-18.  However, AC Transit wished to have judicial confirmation of the 2005 Settlement Agreement. Id. at ¶ 18.  To that end, the plaintiffs in the 2004 state court class action, represented by the same counsel, filed a second lawsuit on behalf of themselves and the same class as before, on April 3, 2006, again in Alameda County Superior Court.  Id.  At AC Transit's request, on June 13, 2006, the parties executed a "Settlement Agreement and Release of Claims," setting forth the same terms as the 2005 Settlement Agreement, and submitted it to the Alameda County Superior Court with a request for judicial approval.  Id.; Monrad Dec., Ex. O.  The 2006 Settlement Agreement was approved by the court on November 8, 2006.  Monrad Dec., Exs. O, P.

After the August 2006 arbitration award was issued, the plaintiffs and AC Transit met and conferred regarding how AC Transit would implement the requirements of the award.  10/1/09 Monrad Dec. at ¶ 29.  In approximately September 2007, AC Transit made lump sum payments to drivers, but the plaintiffs disputed AC Transit's calculations.

In addition, counsel for the plaintiffs continued to assert AC Transit's legal obligation to include start-end and split-shift travel time as part of its calculation of overtime pay under the FLSA.  On September 29, 2006, counsel for the plaintiffs sent a letter to Ms. Hoyt, asserting that AC Transit's failure to provide time and one-half overtime pay for start-end and split-shift travel time violated the FLSA.  Monrad Dec., Ex. T.

On April 10, 2007, AC Transit, the union and the four named plaintiffs entered into a "Settlement Agreement Regarding Travel Time."  Monrad Decl., Ex. S.  The general recitals of the 2007 Settlement Agreement acknowledged Arbitrator Collins' August 7, 2006 Award and stated that "the Parties have met and conferred regarding implementation of this Arbitration Award, and also Plaintiffs' remaining statutory claims relating to travel time."  Id. at 2.  The parties agreed to resolve the implementation of the Arbitration Award and the plaintiffs' remaining statutory claims in one integrated document.  The agreement fully implemented the portion of the arbitrator's award ordering AC Transit to pay

retroactive back pay from October 24, 2003 through August 7, 2006.

Under the heading "Compromise & Release," the agreement stated,

> This Settlement compromises and releases any and all
> claims arising from Plaintiffs' allegation that the
> District failed to pay travel time to bus drivers who
> drive regular scheduled runs which result in different
> starting and ending points, including different
> portions of split runs, in settlement of Plaintiffs'
> FLSA and IWC Wage Order 9 claims regarding such travel
> time, for the period from September 1, 2001 through
> and including (but not beyond) August 7, 2006.
> Plaintiffs preserve their right to pursue statutory
> travel time claims for any period after August 7,
> 2006.

Id.

After the 2007 Settlement Agreement, the plaintiffs continued to assert their position that they were entitled to overtime pay for travel time in accordance with the FLSA.  On June 17, 2007, counsel for the plaintiffs wrote to Ms. Hoyt, reiterating the view that start-end and split-shift travel time must be counted toward overtime as a matter of non-negotiable right under the FLSA. Monrad Dec., Exs. U.

The current five named Plaintiffs filed the present action on November 17, 2008.  On January 15, 2010, this Court held, on the parties' cross motions for summary judgment,

> Start-end and split-shift travel time is compensable
> as hours worked under the FLSA and must be included in
> calculating hours worked for overtime purposes.
> Start-end travel time shall be calculated based on
> scheduled running time; and split-shift travel shall
> be calculated based on actual travel time, which will
> be determined at the damages phase of this action.

Order at 25.

Plaintiffs retained the Litigation and Forensic Consulting Services Group of Hemming Morse, Inc., to produce an expert report calculating damages.  Plaintiff's expert analyzed the payroll and work history data, provided electronically by AC Transit to Plaintiffs, for 1,316 of the 1,360 members of the Plaintiff class for the period between November 17, 2005 and October 31, 2010.  Declaration of David Breshears, ¶ 3.  AC Transit had not yet provided data for fifteen of the 1,360 class members.  To calculate the damages amounts, the expert, pursuant to Plaintiffs' counsel's instructions, used data based on twenty-four different types of earnings.  Id. at ¶ 5, Ex. 2 at 17.

The present summary judgment motions raise various issues related to damages.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at

324; Eisenberg, 815 F.2d 1285, 1289 (9th Cir. 1987).  The court

must draw all reasonable inferences in favor of the party against

whom summary judgment is sought.  Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v.

Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir.

1991).

    Material facts which would preclude entry of summary judgment

are those which, under applicable substantive law, may affect the

outcome of the case.  The substantive law will identify which

facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).

DISCUSSION

I. Motion to Decertify

    The FLSA authorizes workers to sue for unpaid overtime wages

on their own behalf and on behalf of "other employees similarly

situated."  29 U.S.C. § 216(b).  Unlike class actions brought

under Federal Rule of Civil Procedure Rule 23, collective actions

brought under the FLSA require that each individual member "opt

in" by filing a written consent.  See id.

    The FLSA does not define "similarly situated," nor has the

Ninth Circuit defined it.  Although courts have used various

approaches to determine whether plaintiffs are "similarly

situated," district courts in this circuit have employed the ad

hoc, two-tiered approach.  See Wynn v. National Broadcasting Co.,

Inc., 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002); see also

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir. 2001) (discussing three different approaches district courts have used to determine whether potential plaintiffs are "similarly situated" and finding that the ad hoc approach is arguably the best of the three approaches); Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) (finding the two-tiered approach to certification of § 216(b) opt-in classes to be an effective tool for district courts to use).

According to this ad hoc framework, at the initial notice stage, for purposes of conditional certification, the court requires little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." Wynn, 234 F. Supp. 2d at 1082.  As noted earlier, the parties in this action stipulated to conditional certification of the collective action.  The second stage occurs after discovery is largely complete, generally on a motion for decertification by the defendant.  Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).  Then the court weighs several factors, "including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit."  Id. (citing

**United States District Court**
For the Northern District of California

<u>Thiessen</u>, 267 F.3d at 1102-03).  Ordinarily this occurs before liability has been decided.

AC Transit argues that disparate factual circumstances exist due to evidence that certain opt-in Plaintiffs never worked more than forty hours in a week driving buses and may not have incurred damages resulting from AC Transit's overtime compensation policies.  In addition, certain drivers did not engage in split-shift travel, and others did not participate in start-end travel. However, the Court has already determined that AC Transit's overtime policy with respect to start-end and split shift travel violated the FLSA.  The differences that AC Transit has identified simply relate to damages.  Variations in damages awards do not justify decertification of this collective action.  <u>See</u> <u>Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1163 (9th Cir. 2001) (holding that variations in damages for individual class members and proof as to whether they worked on a certain day do not defeat predominance under Rule 23(b)(3)); <u>see also</u> <u>Blackie v. Barrack</u>, 524 F.2d 891, 905 (9th Cir. 1975) (holding, in the context of a securities class action, that the "amount of damages is invariably an individual question and does not defeat class action treatment" under Rule 23's test for the predominance of common issues over individual questions of damages).

Furthermore, the drivers' use of different modes of transportation and variations in travel patterns, which would

affect the amount of Plaintiffs' actual travel time on a given day, do not support decertification.  Plaintiffs' expert has devised a methodology for calculating damages for each opt-in Plaintiff based on AC Transit's detailed records of Plaintiffs' work histories and compensation.  AC Transit lacks data regarding Plaintiffs' actual start-end and split-shift travel time or what methods of transportation were used on a given day.  Not surprisingly, the deposed Plaintiffs are unable to recall these details.

In lieu of direct evidence of actual travel time, Plaintiffs' damages expert utilized data from a service provided by a partnership of government agencies to generate estimates of travel time on public transit in the Bay Area.  The partnership of public agencies that provides this service is led by the Metropolitan Transportation Commission,[4] the California Highway Patrol, and the California Department of Transportation.[5]  AC Transit's expert assumed that the service provided an accurate measurement of actual travel time and relied on the same service to conduct his own analysis.  Breshears Dec., Ex. 3 at ¶ 6.

Although Plaintiffs' reliance on travel time data from this online service may lead to underpayment of some Plaintiffs and

---

[4] The Metropolitan Transportation Commission was established by the California Legislature to operate as the transportation planning, coordinating and financing agency for the nine-county San Francisco Bay Area.  See Cal. Govt. Code § 66502.

[5] http://511.org/about-511-who-we-are.asp

overpayment of others, a reliable approximation of damages is permitted where a defendant has failed to keep records.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946) ("If the employer fails to produce such evidence [of the precise amount of work performed], the court may then award damages to the employee, even though the result be only approximate.").  Ruling otherwise would permit AC Transit to shield itself from Plaintiffs' recovery of damages based on its failure to keep records of the actual travel time amounts.  See id. at 687 ("The solution [to the absence of records], however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.").

That Plaintiffs were in a position to keep records of their travel time and mode of transportation does not change the result.  Anderson recognized, "Employees seldom keep such records [of their work time] themselves; even if they do, the records may be and frequently are untrustworthy."  Instead, the Court placed the burden on employers to track such information.  Id.  This case is analogous to Anderson because both cases involved employer policies that withheld compensation for periods of time in which the plaintiff-employees were "traveling," either on foot to a work station or by bus, personal vehicle or other mode, as part of start-end or split-shift travel, as required by their employers and necessarily for the purposes of benefiting their employers' business.

15

Reed v. County of Orange, 266 F.R.D. 446 (C.D. Cal 2010), does not support decertification of the collective action. There, the court considered the defendant Orange County Sheriff's Department's motion to decertify the FLSA collective action at the liability stage of the litigation. The court found that Sheriff's deputies were not similarly situated with respect to their claims based on pre-shift and post-shift activities, work taken home, meal period violations and a purported departmental policy requiring uncompensated work off-the-clock. Individual circumstances varied significantly in that the deputies held a wide range of assignments, including patrol, jail, court, transportation, administrative, investigative and other specialized assignments. The multitude of assignments placed the deputies in various cities and unincorporated areas, pursuant to contracts for police patrol services. The assignments exposed the deputies to different supervisors and widely divergent work-place practices and conditions, such that they were not similarly situated. Use of the collective action procedure would have precluded the defendant from asserting available defenses.

Here it is apparent that Plaintiffs' FLSA action is directed at particular compensation policies that indisputably govern their pay. The differences in modes of transportation and variations in travel time do not negate that a uniform policy clearly applies to Plaintiffs. Notably, the court in Reed declined to decertify the FLSA collective action to the extent it was based on the Sheriff's

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Department's admitted policy of not compensating deputies for donning and doffing uniforms and protective gear.  Id. at 463-64.

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), does not stand for the proposition that an employer is entitled to an individualized determination of an employee's claim for back pay in all instances in which a claim is brought as a collective or class action.  Plaintiffs in this case are not situated dissimilarly to one another, as the plaintiffs were found to be in Dukes.  The plaintiffs in Dukes were allegedly denied promotions, pursuant to a policy that permitted managers to exercise wide discretion in selecting employees for promotion to management. The variations in the modes of travel of Plaintiffs here, which affect the extent of AC Transit's liability for unpaid travel time, are more limited than the discretionary decision-making that led to failures to promote employees in Dukes.

Similarly, Vinole v. Countrywide Home Loans, Inc. does not apply to this action.  571 F.3d 935, 947 (9th Cir. 2009) (class certification denied, pursuant to Rule 23(b)(3)'s predominance test, because plaintiffs had not alleged or produced evidence of a policy governing employees' use of time, work duties or experiences that would diminish the need for individualized inquiry).  There is no question that the pay practices challenged in this case resulted from uniform policies, rather than discretionary decisions.

17

In re Methionine Antitrust Litigation, 204 F.R.D. 161 (N.D. Cal. 2001), is also inapposite. There the court declined to certify a putative class of indirect purchasers in an antitrust lawsuit because their expert evidence failed to account for a subset of indirect purchasers who resold the price-fixed product, passing along the price-increase to later purchasers. In this respect the expert evidence failed to establish class-wide injury and damages. Here, however, Plaintiffs were similarly governed by the challenged compensation policies.

AC Transit further asserts that allowing this lawsuit to proceed as a collective action will preclude it from any meaningful opportunity to raise available defenses. Specifically, AC Transit contends that the collective action process will prevent it from disputing the actual amount of individual drivers' split-shift travel. As explained earlier, AC Transit does not have such individualized records, and neither do Plaintiffs. AC Transit bears the burden of maintaining records of its employees' hours worked and failure to do so opens the door to assessing damages by a reliable but approximate method. Anderson, 328 U.S. at 687-88.

Contrary to AC Transit's assertion, it may pursue a de minimis defense in the context of a collective action. Indeed, it has mounted such a defense through its cross-motion that it is entitled to judgment as a matter of law that no Plaintiff can recover for certain claimed time that it argues is de minimis.

18

Furthermore, Plaintiffs' expert has made clear that he can easily modify the damages calculation to remove claims for particular days in which a Plaintiff is owed for fewer than ten minutes of unpaid travel time.

Finally, AC Transit contends that fairness and procedural considerations require decertification because neither the Court nor AC Transit approved the notice to potential opt-in Plaintiffs. AC Transit stipulated to conditional certification of the collective action and notification to class members.  AC Transit did not condition its stipulation on approval of the notice content and implementation plan.  AC Transit has not made any specific attack on the notice process.  Presumably AC Transit's work histories and payroll records will enable it to verify the eligibility of any opt-in Plaintiff seeking a recovery.

AC Transit's motion to decertify this collective action is denied.

II. Willfulness and Liquidated Damages

    A. Willfulness

    Plaintiffs renew their earlier motion for summary judgment that AC Transit engaged in willful violations of the FLSA.  In general, FLSA claims are subject to a two-year statute of limitations.  29 U.S.C. § 255(a).  However, the limitations period may be extended to three years for a claim "arising out of a willful violation" of the statute.  Id.  "A violation of the FLSA is willful if the employer 'knew or showed reckless disregard for

the matter of whether its conduct was prohibited by the [FLSA].'" Chao v. A-1 Med. Servs., Inc., 346 F.3d 908, 918 (9th Cir. 2003) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).  "If an employer acts unreasonably, but not recklessly, in determining its legal obligation" under the FLSA, its action is not willful.  McLaughlin, 486 U.S. at 135 n.13.

In its January 15, 2010 Order, this Court found that Plaintiffs had presented enough evidence to allow a jury reasonably to conclude that AC Transit acted willfully in its violations of the FLSA, but denied Plaintiffs' motion for summary judgment on this issue because AC Transit also presented evidence that it did not act willfully.  At that time AC Transit argued, and submitted a declaration by its Assistant General Counsel Carol Babington attesting, that its in-house counsel had been aware of, and had relied upon, authorities, including, among others, United Transp. Union Local 1745 v. City of Albuquerque, 178 F.3d 1109 (10th Cir. 1999); Leahy v. City of Chicago, 96 F.3d 228 (7th Cir. 1996); and Johnson v. RGIS Inventory Specialists, 554 F. Supp. 2d 693, 702 (E.D. Tex. 2007), in support of its position with respect to compensation of travel time.

Subsequently, Plaintiffs sought further discovery on the willfulness issue, specifically, a request for admission that AC Transit did not rely on advice of counsel in continuing not to treat start-end and split-shift travel as "hours worked" subject to FLSA requirements.  After a magistrate judge granted

Plaintiffs' motion for a further response, AC Transit disavowed any intention to rely on advice of counsel as a defense to Plaintiffs' claim that it willfully violated the FLSA, in effect preserving its attorney-client privilege.

In response to Plaintiffs' renewed motion for summary judgment of willfulness, AC Transit cross-moves for a ruling that a finding of willfulness is precluded by the record. AC Transit contends that such a ruling is warranted because (1) it relied on substantial legal authority, namely, that cited in its prior briefing in connection with the parties' 2009 cross-motions for summary judgment on liability and the March 18, 2005 letter from Plaintiffs' counsel, and (2) AC Transit's compensation practices were adopted in the CBA, which was approved by Plaintiffs' union.

The substantial legal authority defense is not the same as the advice of counsel defense. See Huss v. City of Huntington Beach, 317 F. Supp. 2d 1151, 1161 (C.D. Cal. 2000) ("where an employer has relied on substantial legal authority or upon the advice of counsel, a finding of willfulness may be precluded as a matter of law"); Serv. Emp. Int'l Union, Local 102 v. Cnty. of San Diego, 60 F.3d 1346 (9th Cir. 1994). Therefore, the Court considers evidence that supports a finding that AC Transit's managers, apart from their counsel, relied on substantial legal authority. AC Transit General Manager Rick Fernandez testified that he was aware of the Albuquerque case. The March 18, 2005 letter sent by Plaintiff's counsel to AC Transit's counsel makes

United States District Court
For the Northern District of California

clear that Albuquerque provided the basis upon which AC Transit believed that its practices were lawful.  On a motion for summary judgment, facts must be construed in favor of the non-moving party.  Accordingly, even though AC Transit has disavowed its advice of counsel defense, a jury could infer that AC Transit's managers also relied on Albuquerque.  Plaintiffs point to the fact that Fernandez could not recall the details of the case at the time of his deposition, but this does not preclude an inference that he previously understood the case and relied on it.  Although this Court found Albuquerque's reasoning unpersuasive, the decision provides some authority for AC Transit's position.

AC Transit also argues that it relied on the collective bargaining agreement and believed that its practices were lawful or the union would not have agreed to them.  A reasonable jury could find that such reliance was reasonable.  On the other hand, a reasonable jury could find to the contrary in light of the union's consistent position and vigorous efforts asserting that the pay practices violated the FLSA.  Accordingly, this evidence does not warrant summarily adjudicating the issue of willfulness in favor of either party.

Plaintiffs are not entitled to partial summary judgment that AC Transit violated the FLSA willfully with respect to its pay practices.  Nor is AC Transit entitled to a ruling that a finding of willful violation of the FLSA is precluded as a matter of law.

B. Liquidated Damages

For violations of the FLSA's overtime wage provisions, employers "shall be liable to the . . . employees affected in the amount of . . . unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b); see Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583-84 (1942) (observing that FLSA liquidated damages are not penalties exacted by law but, rather, compensation to the employee occasioned by the delay in receiving wages due). However, under 29 U.S.C. § 260, courts need not award liquidated damages in every instance, but instead retain discretion to withhold a liquidated damages award, or to award less than the statutory liquidated damages total, where an employer shows that it "acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate the FLSA."  Alvarez v. IBP Inc., 339 F.3d 894, 909 (9th Cir. 2003) (citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), and 29 C.F.R. § 790.17(i) n.110).

Just as AC Transit argues it did not willfully violate the FLSA, it argues that it acted in good faith and on objectively reasonable grounds.  For the reasons explained above, AC Transit has demonstrated sufficient facts that a fact-finder could find that it acted with the good faith belief that its pay practices were lawful.  Accordingly, Plaintiffs' motion for partial summary

judgment that they are entitled, as a matter of law, to liquidated damages is denied.  Likewise, the Court denies AC Transit's request for summary adjudication of the issue in its favor.  The award of liquidated damages is a matter reserved for the Court's discretion, and the Court will make its determination after trial.

III. Damages Calculations

A. Regular Rate Calculation and Elapsed Time Premium

The FLSA's overtime provision requires that an employer compensate its employee for work in excess of forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  "The Supreme Court interprets 'regular rate' to mean 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.'"  Parth v. Pomona Valley Hosp. Medical Center, 630 F.3d 794, 799 (9th Cir. 2010).  Here, Plaintiffs' "regular rate of pay" is not necessarily their base straight time hourly rate.  Plaintiffs seek an order that the twenty-four identified types of earnings that they have asked their damages expert to include in his regular rate of pay calculation are properly included as a matter of law.

AC Transit objects only to the inclusion of "elapsed" or "spread" time premiums.  Pay for elapsed time is a premium paid to a bus driver when the elapsed time, or "spread," between her start-time and end-time for the day exceeds ten hours.  See Monrad Dec., Ex. K, CBA at ¶ 66.03.  AC Transit argues that elapsed time

United States District Court
For the Northern District of California

pay should not be included in the regular time calculation, but instead should be treated as a credit to offset overtime compensation due.

The FLSA deems the "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee," with eight exceptions. 29 U.S.C. § 207(e)(1)-(8). In turn, section 207(h)(1) of the FLSA provides that sums that are not included in the regular rate shall not be creditable towards overtime compensation, except that "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section." 29 U.S.C. § 207(h)(1)-(2). AC Transit argues that elapsed time pay should be treated as a credit against owed overtime compensation because it is covered by section 207(e)(7).

Section 207(e)(7) states that

> extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section[)], where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek . . .

29 U.S.C. § 207(e)(7). The implementing regulation for this provision refers to this type of pay as "clock pattern" premium pay and explains,

United States District Court
For the Northern District of California

> To qualify as an overtime premium under section
> 7(e)(7) the premium must be paid because the work was
> performed during hours "outside of the hours
> established * * * as the basic * * * workday or
> workweek" and not for some other reason. Thus, if the
> basic workday is established in good faith as the
> hours from 8 a.m. to 5 p.m. a premium of time and one-
> half paid for hours between 5 p.m. and 8 a.m. would
> qualify as an overtime premium. However, where the
> contract does not provide for the payment of a premium
> except for work between midnight and 6 a.m. the
> premium would not qualify under this section since it
> is not a premium paid for work outside the established
> workday but only for certain special hours outside the
> established workday, in most instances because they
> are undesirable hours. Similarly, where payments of
> premium rates for work are made after 5 p.m. only if
> the employee has not had a meal period or rest period,
> they are not regarded as overtime premiums; they are
> premiums paid because of undesirable working
> conditions.

29 C.F.R. § 778.204(b) (stars in original).

Here the elapsed time premiums were established by contract, but there is no uniform workday by which to determine whether work was performed outside of an established workday. Because the elapsed time premiums are paid due to the spread between the start-time and end-time, and not due to work performed outside the normal working day, they amount to a premium paid for undesirable working conditions. Thus, elapsed time premiums are not creditable against overtime compensation owed by AC Transit, and are properly included in the calculation of Plaintiffs' regular rate.

United States District Court
For the Northern District of California

B. Other Claimed Credits Against Overtime Compensation Owed

1. Premium Pay for Work on Scheduled Day Off

AC Transit asserts that premium pay for work on a scheduled day off should be credited to any calculation of overtime owed. Plaintiffs do not dispute that, as a general matter, AC Transit may credit premiums paid for work on "regular days of rest." However, Plaintiffs contend that they cannot respond to this argument because AC Transit provides no explanation of which contractual provision or payroll earning code its argument refers to. Although AC Transit did not provide a further explanation in its reply brief, its cross-motion for partial summary judgment on this issue is granted because it appears undisputed that it may credit premiums paid to drivers for working a regularly scheduled day off.

2. Aggregated versus Workweek Limitation to Offset

Plaintiffs argue that offsets against unpaid wages due must be calculated on a weekly basis, not applied in the aggregate against unpaid wages earned during the entire period of the lawsuit. The FLSA and its implementing regulations are not clear on this point, and the Ninth Circuit has not directly addressed it.

The reasoning in Herman v. Fabri-Centers of America, Inc. is persuasive. 308 F.3d 580 (6th Cir. 2002). In Herman the Sixth Circuit analyzed the FLSA's legislative history, its implementing regulations and related case law, arriving at the conclusion that

contract premiums to offset overtime owed to employees applied only to the same workweek or work period as the missed overtime. See also Howard v. City of Springfield, Ill., 274 F.3d 1141, 1149 (7th Cir. 2001) (holding that "the district court erred in allowing the blanket application of all [§ 207] premium payments to all overtime liabilities").

Kolheim v. Glynn County, 915 F.2d 1473, 1481 (11th Cir. 1990), a case cited by AC Transit, did not grapple with the legislative history indicating the remedial purposes of the FLSA, nor did it address regulatory language or case law related to the issue. Murrillo v. Pacific Gas and Electric, 2010 WL 2889728 (E.D. Cal.), is not persuasive because it is a decision granting final approval to a FLSA settlement. Furthermore, it makes a conclusory and incorrect statement, citing only Farris v. County of Riverside, 667 F. Supp. 2d 1151, 1164-65 (C.D. Cal. 2009), that a majority of courts reduce overtime obligations by any extra compensation received across the entire period of the lawsuit. Farris did not address this issue because the plaintiffs there did not argue that credits for premium pay could only be applied to offset unpaid overtime earned within the same workweek or pay period in which the premium pay was earned.

Finally, Singer v. City of Waco, Tex., 324 F.3d 813, 828 (5th Cir. 2003), is an out-of-circuit decision that is unpersuasive. Singer held that overpayments could be credited towards unpaid overtime earned in other pay periods, reasoning that the

overpayments could be construed as "pre-payments" for shortfalls in overtime pay in subsequent work periods.  The Fifth Circuit acknowledged, but disregarded, a regulatory provision upon which Herman relied--29 C.F.R. § 778.106, which states, "The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends."  Singer's ruling contravened FLSA policy and other Fifth Circuit law indicating that an employer violates the FLSA not only by failing to pay overtime compensation but also by delaying payment of overtime compensation.  See Halferty v. Pulse Drug Co., Inc., 821 F.2d 251, 271 (5th Cir. 1987).

Partial summary judgment is granted in favor of Plaintiffs that offsets must be calculated on a weekly basis and may not be aggregated over the entire period of the suit.

C. Overtime Before August 7, 2006

Plaintiffs' complaint states claims on behalf of all bus drivers employed by AC Transit since August 7, 2006 who filed opt-in consents.  However, Plaintiffs' expert has included in his damages calculations amounts claimed to be owed for the period prior to August 8, 2006.  AC Transit claims that the April 10, 2007 settlement agreement bars Plaintiffs from recovering any damages prior to August 8, 2006.  AC Transit is correct that the 2007 agreement releases Plaintiffs' FLSA claims for start-end and split-shift travel time for the period from September 1, 2001 through August 7, 2006.  Monrad Dec., Ex. 2.

Pursuant to the 2005 and 2006 Settlement Agreements, the arbitration was limited to the plaintiffs' contract claims, and did not resolve the FLSA claims, which the plaintiffs retained their right to litigate after the issuance of the arbitrator's opinion. Monrad Dec., Ex. R at 9. Arbitrator Collins' August 7, 2006 opinion and award found violations only of the CBA. However, in the 2007 Settlement Agreement, the plaintiffs relinquished their FLSA claims for the period prior to August 8, 2006, in exchange for an agreement as to how the August 7, 2006 arbitration award would be implemented. Monrad Dec., Ex. S at ¶ C. The implementation of the award had been hampered by ongoing disputes between AC Transit and the plaintiffs.

Although the 2007 release was not given in the context of a FLSA lawsuit or approved by a court, Plaintiffs have not established grounds for disregarding it now. Cf. Lynn's Food Stores, Inc. v. U.S. by and through U.S. Dept. of Labor, 679 F.2d 1350, 1354 (5th Cir. 1982) ("Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.") The 2007 agreement was reached in an adversarial context with Plaintiffs' union represented by counsel and it appears reasonable. AC Transit's motion for partial summary judgment that Plaintiffs may not recover for FLSA claims prior to August 8, 2006 is granted.

United States District Court
For the Northern District of California

D. Overtime Gap Time

Plaintiffs seek summary adjudication that their damages calculation may include compensation at their straight time rate of pay for unpaid travel time incurred before they had accrued forty hours in a given week, in those weeks when they are owed overtime damages for travel time incurred in excess of forty hours.  This occurs when their actual split shift travel time exceeds the scheduled running time for which they are paid at straight time rates.  The Ninth Circuit authorized such an award of overtime damages in Donovan v. Crisostomo, 689 F.2d 869, 876 (9th Cir. 1982).  There the defendant-appellants argued that the FLSA only permitted recovery for unpaid minimum wages or unpaid overtime wages, not underpaid wages resulting from a kickback scheme which failed to result in wages falling below the minimum wage.  Id.  However, the court reasoned that if the employer were permitted to reduce straight time pay during overtime weeks, "the employer could effectively eliminate the premium paid for overtime," undermining the policy goals of the FLSA's overtime provision.

AC Transit argues that Plaintiffs may not recover for such amounts because Plaintiffs failed to plead for recovery of such amounts specifically in their complaint.  Donovan rejected this precise argument because it considered the unpaid straight time "an integral part of the overtime violation."  Id. at 876 n.14. Donovan does not require more specific pleading to recover for

unpaid wages that do not amount to unpaid minimum or overtime wages, where recovery is contingent on a FLSA claim that has been alleged.  Plaintiffs' motion for summary adjudication is granted; Plaintiffs may include in their damages calculation unpaid travel time at the straight time rate of pay, incurred before they have worked forty hours, in those weeks when they are owed overtime damages for travel time incurred resulting in a work week in excess of forty hours.

E. De Minimis Claims

An employer may assert a defense against recovery for a FLSA violation where the wage claim is de minimis.  See Anderson, 328 U.S. at 692; Alvarez, 339 F.3d at 903-04 (holding that the time to perform certain tasks was de minimis and, thus, non-compensable).  This Court's January 15, 2010 Order denied AC Transit's motion for summary judgment, based on the de minimis doctrine, on Plaintiffs' split-shift travel claims.  AC Transit argued that Plaintiffs' claims for split-shift travel were de minimis because, averaged across a ninety-six week period, they amounted to less than a minute per day per driver.  The Court found it misleading to focus on such daily averages when they masked uncompensated overtime amounts that were not insubstantial.  Id.  Here, AC Transit presents a different de minimis argument.  AC Transit takes issue with Plaintiffs' expert's failure to exclude from the damages calculations minimal amounts of overtime due to start-end and split-shift travel time.

United States District Court
For the Northern District of California

The Court explained in its previous order, "The de minimis rule is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes." Lindow v. United States, 738 F.2d 1057, 1062 (9th Cir. 1984). The de minimis rule applies

> only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

29 C.F.R. § 785.47. "Employers, therefore, must compensate employees for even small amounts of daily time unless that time is so minuscule that it cannot, as an administrative matter, be recorded for payroll purposes." Lindow, 738 F.2d at 1062-63. The Ninth Circuit applies the de minimis rule by considering the following factors: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." Rutti v. Lojack Corp., Inc., 596 F.3d 1046, 1057 (9th Cir. 2010) (citing Lindow, 738 F.2d at 1063). The Ninth Circuit has not adopted a ten or fifteen minute de minimis rule. Id. at 1058.

Split-shift travel was regularly required of a significant number of Plaintiffs in this action, leading to a substantial aggregated amount of uncompensated time. AC Transit did not take the position that administrative difficulty thwarted recording or

United States District Court
For the Northern District of California

paying for small amounts of split-shift travel time.  Rather, AC Transit's position has been that it is not required under the FLSA to compensate such time.  Plaintiffs' expert has provided a method of calculating travel times expeditiously.  In this respect, AC Transit's de minimis defense is a request that the Court disregard small amounts of uncompensated overtime because they are small amounts when disaggregated.  AC Transit's motion for summary adjudication that it is entitled to a de minimis defense is denied.

CONCLUSION

AC Transit's motion to decertify the collective action is denied.  Plaintiffs' motion for partial summary judgment that AC Transit's violations were willful and in bad faith is denied.  AC Transit's motion for partial summary judgment that it did not willfully violate the FLSA, but acted in good faith, is denied. AC Transit has not opposed Plaintiffs' inclusion of the twenty-four types of earnings in the regular rate calculation, except the elapsed time premium.  The elapsed time premium is properly included in the regular rate calculation and, thus, is not creditable against overtime compensation owed.  Accordingly, all twenty-four types of earnings are includable in the calculation of the regular rate of pay.  Plaintiffs are entitled to include in their damages calculation compensation at their straight time rate of pay for unpaid travel time incurred before they worked forty hours in a week, in those weeks when they are owed overtime

damages for travel time.  AC Transit's motion for partial summary judgment, based on the 2007 settlement agreement, precluding Plaintiffs' recovery for claims prior to August 8, 2006, is granted.

Within two weeks after this order, the parties shall submit a joint or separate statements proposing a plan to resolve the damages phase of the case.

IT IS SO ORDERED.


Dated: **11/2/2011**

CLAUDIA WILKEN
United States District Judge